IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| David Taylor, | ) |
|        Plaintiff, | ) |
| v. | ) Case No. 22-cv-6104 |
| | ) Judge Joan B. Gottschall |
| The Retirement Board of the Policemen's Annuity and Benefit Fund of the City of Chicago, et al., | ) |
|        Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff David Taylor ("Taylor"), a Chicago police officer, was involved in an on-duty shooting on July 3, 2018. Compl. ¶ 9, ECF No. 1. As a result, doctors diagnosed him with posttraumatic stress disorder ("PTSD") and recommended that he not return to work. *See* Compl. ¶¶ 10–12. Following a one-year medical leave of absence, Taylor applied in April 2022 to the Retirement Board ("the board") of the Policemen's Annuity and Benefit Fund of the City of Chicago ("the fund") for a duty-related disability benefit. *See* Compl. ¶¶ 13–14. In November 2022, Taylor filed his complaint in this court under 42 U.S.C. § 1983 against the board and eight of its members, alleging a procedural due process claim based on the board's July 2022 denial of a temporary disability benefit and the board's subsequent four-month delay in scheduling a hearing. *See* Compl. ¶¶ 4–7, 28–41. Before the court is defendants' motion to dismiss Taylor's complaint for failure to state a claim and for lack of subject matter jurisdiction. ECF No. 13. For the reasons that follow, Taylor has not plausibly alleged a deprivation of a property interest protected by the Fourteenth Amendment's due process clause.

### I. Background

#### A. Statutory and Regulatory Background

The board administers the Chicago Police Department's public pension funds in accordance with Article V of the Illinois Pension Code ("the code"). *Rosario v. Ret. Bd. of Policemen's Annuity & Benefit Fund for Chi.*, 743 F.3d 531, 534 (7th Cir. 2014); *see*

40 Ill. Comp. Stat. §§ 5/5-183 to 5-195 (West 2023) (listing powers of the board). The code gives the board "exclusive original jurisdiction in all matters relating to or affecting the fund, including, in addition to all other matters, all claims for annuities, pensions, benefits or refunds." 40 Ill. Comp. Stat. § 5/5-189 (West 2023). "The Board's pension determinations are administrative decisions which may be reviewed pursuant to the provisions of the Illinois Administrative Review Law." *Rosario*, 743 F.3d at 534 (citing 735 Ill. Comp. Stat. §§ 5/3-101 to 3-102).

This suit involves Taylor's claim for a duty disability benefit under § 5/5-154 of the code, which section provides in part:

> (a) An active policeman who becomes disabled on or after the effective date as the result of injury incurred on or after such date in the performance of an act of duty, has a right to receive duty disability benefit during any period of such disability for which he does not have a right to receive salary, equal to 75% of his salary, as salary is defined in this Article, at the time the disability is allowed; or in the case of a policeman on duty disability who returns to active employment at any time for a period of at least 2 years and is again disabled from the same cause or causes, 75% of his salary, as salary is defined in this Article, at the time disability is allowed; provided, however, that:
>
> (i) If the disability resulted from any physical defect or mental disorder or any disease which existed at the time the injury was sustained, or if the disability is less than 50% of total disability for any service of a remunerative character, the duty disability benefit shall be 50% of salary as defined in this Article.
>
> (ii) Beginning January 1, 1996, no duty disability benefit that has been payable under this Section for at least 10 years shall be less than 50% of the current salary attached from time to time to the rank held by the policeman at the time of removal from the police department payroll, regardless of whether that removal occurred before the effective date of this amendatory Act of 1995. Beginning on January 1, 2000, no duty disability benefit that has been payable under this Section for at least 7 years shall be less than 60% of the current salary attached from time to time to the rank held by the policeman at the time of removal from the police department payroll, regardless of whether that removal occurred before the effective date of this amendatory Act of the 92nd General Assembly.
>
> (iii) If the Board finds that the disability of the policeman is of such a nature as to permanently render him totally disabled for any service of a remunerative character, the duty disability benefit shall be 75% of the current salary attached from time to time to the rank held by the policeman at the time of removal from the police department payroll. In the case of a policeman receiving a duty disability benefit under this Section on the effective date of this amendatory Act of the 92nd General Assembly, the increase in benefit provided by this amendatory Act, if any, shall begin to accrue as of the date that the Board makes

        the required finding of permanent total disability, regardless of whether removal from the payroll occurred before the effective date of this amendatory Act.

40 Ill. Comp. Stat. § 5/5-154(a) (West 2022).[1]

        The code requires "duty, occupational disease, or ordinary disability" to be proven by "at least one licensed and practicing physician appointed by the board." 40 Ill. Comp. Stat. § 5/5-156 (West 2023). The board is expressly authorized to "require other evidence of disability." *Id*. The code further provides: "A disabled policeman who receives a . . . disability benefit shall be examined at least once a year by one or more physicians appointed by the board. When the disability ceases, the board shall discontinue payment of the benefit, and the policeman shall be returned to active service." *Id*.

        When reviewing a decision approving or denying a duty disability benefit claim, Illinois courts ask whether the board's factual findings are against the manifest weight of the evidence. *Kelly v. Ret. Bd. of Policemen's Annuity & Benefit Fund of Chi.*, 2022 IL App (1st) 210483, ¶ 30 (citing *Comprehensive Cmty. Sols., Inc. v. Rockford Sch. Dist. No. 205*, 837 N.E.2d 1, 10–11 (Ill. 2005)). "Questions of law . . . are reviewed *de novo*, while mixed questions of law and fact are reviewed under the clearly erroneous standard." *Id.* ¶ 31 (citations omitted). Illinois courts treat "[t]he question of whether the evidence of record supports the Board's denial of plaintiff's application for a disability pension" as "a question of fact." *Id.* ¶ 32. When deciding a duty disability benefit claim, the board makes findings and often weighs competing testimony, including expert testimony from doctors, on matters such as the cause of the claimant's disability and whether it is duty-related. *See, e.g.*, *id.* ¶¶ 34–37, 41–42; *Summers v. Ret. Bd. of Policemen's Annuity & Benefit Fund of Chi.*, 2013 IL App (1st) 121345, ¶¶ 25–46; *Cole v. Ret. Bd. of Policemen's Annuity & Benefit Fund of Chi.*, 920 N.E.2d 476, 484–87 (Ill. App. Ct. 1st Dist. 2009).

---

1    Effective May 10, 2023, the Illinois legislature amended § 5/5-154 to add a provision concerning eligibility for COVID-related disability. *See* 2023 Ill. Legis. Serv. P.A. 103-2, § 5 (codified at 40 Ill. Comp. Stat. §§ 5/5-154(e), 6-151). The Illinois legislature did not amend any of the provisions cited in this opinion.

### B. The Complaint

For purposes of resolving the pending motion, the court accepts the complaint's well-pleaded facts as true and draws all reasonable inferences from those facts in Taylor's favor. *See Hernandez v. Ill. Inst. of Tech.*, 63 F.4th 661, 666 (7th Cir. 2023) (citing *Crescent Plaza Hotel Owner, L.P. v. Zurich Am. Ins. Co.*, 20 F.4th 303, 308 (7th Cir. 2021)).

Taylor became a Chicago police officer in 2015. Compl. ¶ 8. After the July 3, 2018, on-duty shooting incident, Dr. Alexis Reynolds initially diagnosed Taylor with PTSD and opined that he was unfit for duty. Compl. ¶ 12. "The City of Chicago Police Department also believes that Plaintiff is unfit for duty as a result of his PTSD caused by his on-duty shooting," and the department "will not permit Plaintiff to work as an officer." Compl. ¶ 26.

On April 8, 2022, following his one-year medical leave, the city switched Taylor to a "no-pay status," meaning that he is receiving no money from the city. Compl. ¶¶ 24, 27. He applied for a duty disability benefit in the same month. Compl. ¶ 14. Attorney Ralph J. Licari ("Licari") represents Taylor before the fund. Compl. ¶ 19. As part of the application process, an independent medical examiner selected by the fund, Dr. Michelle M. Lilly ("Lilly"), evaluated Taylor on July 6, 2022. Compl. ¶ 15; *see also* 40 Ill. Comp. Stat. § 5/5-156 (West 2023). Lilly concluded that Taylor "qualifies for a diagnosis of PTSD" and wrote in her summary of findings, "It is the opinion of the evaluator that Mr. Taylor is disabled and unable to return to work as a result of the duty-related incident experienced on 07/03/2018." Compl. ¶ 16 (quoting summary of findings not in record). Lilly subsequently amended her findings to make clear that it is her opinion that Taylor is disabled and unable to return to work and that his disability is directly related to the July 3, 2018, officer-involved shooting. Compl. ¶ 17 (citing amended summary not in record).

The board generally holds monthly meetings at which it considers pension benefit applications. Compl. ¶ 18. According to the complaint, the board "routinely grants an ordinary disability benefit without prejudice pending a full hearing" after an independent medical examiner opines that an officer is disabled. Compl. ¶ 35. That did not happen in Taylor's case.

4

The board held an initial hearing on July 28, 2022, and voted to defer Taylor's application for temporary benefits pending a full hearing. Compl. ¶ 20. Consequently, Taylor receives no pay from the city and no temporary benefits from the fund. *See* Compl. ¶¶ 20, 27. The complaint does not explain the basis of the board's decision to deny temporary benefits.

In separate email messages[2] to fund staff, Licari asked that Taylor's application be set for a full hearing at the August, September, October, and November 2022 board meetings. *See* Compl. ¶¶ 21–24. Each request was denied. *See* Compl. ¶¶ 21–24. Through an employee, the board told Licari that it was "not ready to hear" Taylor's claim and that it was "gathering more information." Compl. ¶¶ 21, 22 (quoting email messages from an unnamed fund employee). In response to Licari's request to set a hearing in October 2022, a board representative stated, "When the Fund has determined that all the necessary information has been acquired, Mr. Taylor will be scheduled for a hearing before the Board." Compl. ¶ 23. When "Licari indicated that he would obtain any information that the [board] required," the board replied that "the Fund will let [Licari] know if it requires [his] assistance in gathering information." Compl. ¶ 25.

Taylor filed his complaint in this court in November 2022. He alleges that defendants have deprived him of due process by (a) "Failing to give Plaintiff an appropriate hearing for his disability claim;" and (b) "Failing to award Plaintiff his appropriate pension benefits." Compl. ¶ 36.

## II. Subject Matter Jurisdiction: The *Rooker-Feldman* Doctrine

Defendants' jurisdictional arguments must be resolved at the threshold because "courts cannot decide [the merits of] any controversy over which they lack subject-matter jurisdiction." *Johnson v. Wattenbarger*, 361 F.3d 991, 993 (7th Cir. 2004); *see Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998). Defendants argue that the *Rooker-Feldman* doctrine deprives this court of jurisdiction to hear Taylor's § 1983 due process claim. *See Rooker v. Fid. Tr. Co.*, 263 U.S. 413 (1923); *Dist. of Columbia Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983). In

---

2    The complaint summarizes and quotes several email messages between Licari and board representatives. *See* Compl. ¶¶ 21–25. The email messages are not in the record.

5

short, the *Rooker-Feldman* doctrine "prohibits federal courts from adjudicating cases brought by state-court losing parties challenging state-court judgments." *Reed v. Goertz*, 598 U.S. 230, 235 (2023); *see generally Hadzi-Tanovic v. Johnson*, 62 F.4th 394, 399 (7th Cir. 2023). More specifically, "The *Rooker-Feldman* doctrine . . . is confined to cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

For the *Rooker-Feldman* doctrine to apply, the state court judgment being challenged must be final when the proceedings in federal court commence. *See Hadzi-Tanovic*, 62 F.4th at 399–401. Defendants do not identify any state court judgment relevant to Taylor's § 1983 claims. *See* Mem. Supp. Mot. to Dismiss 8–9, ECF No. 14. Nor does Taylor allege that any state court judgment was issued before he filed his complaint. He instead pleads that proceedings on his application for a duty disability benefit were ongoing before the board when he filed his complaint. *See* Compl. ¶ 27. Because Taylor does not seek review of a state court judgment that was final when this lawsuit was commenced, the *Rooker-Feldman* doctrine does not apply. *See Exxon Mobile*, 544 U.S. at 292; *Christopherson v. Am. Strategic Ins. Corp.*, 999 F.3d 503, 509 (7th Cir. 2021); *Parker v. Lyons*, 757 F.3d 701, 705–06 (7th Cir. 2014).

### III. Analysis

A Rule 12(b)(6) motion tests the complaint's sufficiency, not the merits of the case. *See Skinner v. Switzer*, 562 U.S. 521, 529–30 (2011) (citations omitted). Federal Rule of Civil Procedure 8(a)(2) requires a complaint to set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a Rule 12(b)(6) motion, a pleading must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint satisfies this standard when its factual allegations "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citations omitted).

The due process clause of the Fourteenth Amendment provides, "[N]or shall any State deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. Due process has substantive and procedural components. *See Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998). Taylor pleads a procedural due process claim, so he must plausibly allege "(1) deprivation of a protected [liberty or property] interest and (2) insufficient procedural protections surrounding that deprivation." *Orozco v. Dart*, 64 F.4th 806, 814 (7th Cir. 2023) (quoting *Tucker v. City of Chicago*, 907 F.3d 487, 491 (7th Cir. 2018)).

Defendants contend that Taylor's complaint does not adequately plead the first element. To identify a property interest protected by the due process clause, the court "look[s] to an independent source, such as state law, rather than the U.S. Constitution itself." *GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d 357, 365 (7th Cir. 2019) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985)). "The procedural component of the Due Process Clause does not protect everything that might be described as a benefit." *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005) (quotation omitted). For a claimed benefit under state law to rise to the level of a property interest protected by procedural due process, the plaintiff "must have more than an abstract need or desire" and "more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Id.* (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)). The plaintiff must also plead a deprivation. The court separately "asks whether [the plaintiff] has been deprived of this property right without due process of law." *GEFT Outdoors*, 922 F.3d at 365 (citing *Hudson v. City of Chicago*, 374 F.3d 554, 559 (7th Cir. 2004)). The complaint here identifies three potential property interests.

### A. *Entitlement to a Duty Disability Benefit*

Taylor alleges that he has a protected property interest in a duty disability benefit. Compl. ¶ 36(b). He argues that the city and Lilly agree that he is disabled and that his PTSD was caused by his involvement in a duty-related shooting incident on July 3, 2018. *See* Resp. Opp'n

7

Mot. to Dismiss ("Resp.") 8, ECF No. 16. To show that this agreement entitles him to a benefit, Taylor points to the language at the beginning of 40 Ill. Comp. Stat. § 5/5-154(a):

> An active policeman who becomes disabled on or after the effective date *as the result of injury* incurred on or after such date *in the performance of an act of duty*, has a right to receive duty disability benefit during any period of such disability for which he does not have a right to receive salary. . . .

40 Ill. Comp. Stat. § 5/5-154(a) (West 2022) (emphasis added); *see* Resp. 8–9.

As explained in Part I.A, *supra*, the emphasized phrases create conditions on the applicant's entitlement to a disability benefit—conditions requiring the board to make factual findings on the cause of Taylor's disability and whether it is duty-related. *See Kelly*, 2022 IL App (1st) 210483, ¶¶ 30–32. The code specifies when the right to receive benefits comes into existence: the applicant "has a right to receive duty disability benefit . . . *at the time the disability is allowed*." § 5/5-154(a) (emphasis added). Taylor does not allege that the board has allowed his claim for a duty disability benefit, so he has not pleaded a plausible claim of a present entitlement to a duty disability benefit under § 5/5-154(a).[3]

Regarding the evidence Taylor submitted in support of his application, Taylor points to no statute, regulation, or rule requiring the board to accept the city's or a physician's opinion when making a duty disability determination. To the contrary, the code vests the board with "exclusive jurisdiction" to decide applications for duty-related disability benefits. 40 Ill. Comp. Stat. § 5/5-189 (West 2023); *see also id*. § 5/5-224 (West 2023) (listing duties of the city as they relate to the board). And the code authorizes the board to request additional evidence in its discretion before deciding a duty disability benefit claim. *See* 40 Ill. Comp. Stat. § 5/5-156 (West 2023); *Schroeder v. City of Chicago*, 927 F.2d 957, 958 (7th Cir. 1991) (citation omitted). Accordingly, Taylor does not plausibly allege that the agreement of the city and two physicians that an applicant is disabled creates an entitlement to a duty disability benefit under the code. *See* §§ 5/5-154, 5-156.

---

3   The court implies no view on when a "disability is allowed" for purposes of § 5/5-154(a).

8

Nor has Taylor shown that he has a property interest in a temporary disability benefit pending a full hearing before the board. *See* Compl. ¶ 20. "A protected property interest exists only when the state's discretion is 'clearly limited such that the plaintiff cannot be denied the interest unless specific conditions are met.'" *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 900 (7th Cir. 2012) (quoting *Brown v. City of Mich. City*, 462 F.3d 720, 729 (7th Cir. 2006)); *compare Olim v. Wakinekona*, 461 U.S. 238, 250–51 (1983), *with Hewitt v. Helms*, 459 U.S. 460, 470–72 (1983). Taylor pleads that the board "routinely" (but not always) awards a temporary benefit when an independent medical examiner opines that an officer is disabled. Compl. ¶ 35. Taylor cites no statute, regulation, or rule limiting the board's discretion to grant or deny a temporary benefit pending a full hearing, and the court has found nothing in the code concerning temporary benefits. *See* Resp. 5–10. Although Taylor disagrees with the board's decision on July 28, 2022, to deny a temporary benefit, he does not argue that the board exceeded its discretion under the code and applicable rules. *See id*. As stated by the Seventh Circuit when interpreting similar provisions of Article VI of the code, a temporary disability benefit appears to be "a matter . . . of grace" rather than a matter of right. *Schroeder*, 927 F.2d at 959. Taylor has not pleaded a plausible claim that he has a protected property interest in a temporary benefit. *See Booker-El*, 668 F.3d at 900.

**B. Prematurity**

Regardless of whether Taylor has a property interest in a temporary or permanent duty disability benefit, the complaint makes clear that proceedings to determine whether Taylor should receive a duty disability benefit remain ongoing before the board. *See* Compl. ¶¶ 20–26. Ordinarily, "due process challenges are premature if the plaintiff has not exhausted possible state remedies." *Covington Ct., Ltd. v. Vill. of Oak Brook*, 77 F.3d 177, 179 (7th Cir. 1996) (citing *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 188–89 (1985)); *see also Tucker*, 907 F.3d at 492; *Cleven v. Soglin*, 903 F.3d 614, 615–17 (7th Cir. 2018); *Greenfield Mills, Inc. v. Macklin*, 361 F.3d 934, 961–62 (7th Cir. 2004); *Gamble v. Eau Claire Cnty.*, 5 F.3d 285, 287 (7th Cir. 1993). Except for his delay claim discussed *infra*, Taylor does not argue that

9

Illinois's procedures for hearing, determination, and judicial review of claims for duty disability benefits are inadequate. *See* Resp. 5–7. Accordingly, Taylor's due process claim based on a deprivation of a duty disability benefit is premature, and his "remedy is through the Illinois administrative review process, not a § 1983 action." *Rosario v. Ret. Bd. of Policemen's Annuity & Benefit Fund of Chi.*, 803 F. Supp. 2d 871, 877 (N.D. Ill. 2011) (Gottschall, J.) (dismissing Chicago police officer's § 1983 due process claim).

### C. Delay

Taylor pleads that the board deprived him of a protected property interest by delaying scheduling a full hearing, despite his attorney's requests for a hearing to be set in August, September, October, and November 2022. *See* Compl. ¶¶ 21–24, 36(a). As with his alleged interest in a temporary benefit, Taylor points to no language in the code, nor in any other statute or rule, limiting the board's discretion in requiring more evidence or scheduling a hearing. *See* Resp. 8–10; 40 Ill. Comp. Stat. § 5/5-156 (West 2023).

Due process has "a limited role to play in protecting against oppressive delay." *Tucker*, 907 F.3d at 493 (quoting *United States v. Lovasco*, 431 U.S. 783, 789 (1977)). Nonetheless, "The Due Process Clause requires provision of a hearing at a meaningful time. At some point, a delay in [holding a] . . . hearing . . . become[s] a constitutional violation." *Loudermill*, *supra*, 470 U.S. at 547 (citing *Barry v. Barchi*, 443 U.S. 55, 66 (1979); internal quotation omitted). "Justice delayed is justice denied, the saying goes; and at some point delay must ripen into deprivation, because otherwise a suit alleging deprivation would be forever premature." *Schroeder*, 927 F.2d at 960.

In assessing a delay in holding a hearing, the Supreme Court has employed the three-factor balancing test enunciated in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), to determine whether the state provided the process due to the plaintiff. *See City of Los Angeles v. David*,

538 U.S. 715, 716–17 (2003) (per curiam) (citing *FDIC v. Mallen*, 486 U.S. 230, 242 (1988)).

The *Mathews* factors are:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*David*, 538 U.S. at 716 (quoting *Mathews*, 424 U.S. at 335).

In briefing the delay here, the parties focus primarily on two cases. The first is *Schroeder*, *supra*, in which a former Chicago firefighter applied to a public pension board for a disability benefit under a statutory scheme similar to the one at issue here. *See Schroeder*, 927 F.2d at 958. Although the board ultimately awarded him a disability benefit, the plaintiff in *Schroeder* brought a due process claim based on its eight-month delay in deciding his application. *See id*. at 959. He argued that two Chicago fire department employees had maliciously withheld a medical certification, delaying the application process. *See id*.

The Seventh Circuit held that the delay did not violate due process. *Id*. at 960–61. The *Schroeder* court cited a case finding unremarkable "delays of six months and even nineteen months in the processing of a claim for social security benefits" and recalled that in *Mathews* the Supreme Court countenanced an average delay of more than a year in holding a post-deprivation hearing and deciding that social security benefits had been wrongfully terminated. *See id.* at 960 (citing *Isaacs v. Bowen*, 865 F.2d 468, 477 (2d Cir. 1989); other citations omitted). "[C]ases on unreasonable delay," the *Schroeder* court explained, "are best understood as holding that implicit in the conferral of an entitlement is a further entitlement, to receive the entitlement within a reasonable time." *Id*. Given the foregoing guideposts, the Seventh Circuit ruled that the eight-month delay in the plaintiff's receipt of benefits "was not sufficiently egregious in this case to deprive [him] of this additional, implicit entitlement, assuming he had such a thing." *Id*.

The parties also draw the court's attention to the Illinois Supreme Court's due process analysis in *Marconi v. Chicago Heights Police Pension Board*, 870 N.E.2d 273, 299–300 (Ill.

11

2006) (per curiam). The case came before the Illinois Supreme Court on appeal of an adverse disability benefit decision made by the board, but the applicant also argued before the Illinois Supreme Court that the board's unreasonable delays in deciding his application violated his right to due process. *Marconi*, 870 N.E.2d at 299. Nearly five years elapsed between the time the plaintiff provided the board with all of the information it requested in November 1997 and the board's decision in October 2002. *See id*. at 277–89. The Illinois Supreme Court held that a due process violation had not occurred. *Id*. at 299–300. The court declined to "declare a bright-line rule that once an agency's delay in processing a disability benefit claim passes a certain point in time, that delay automatically violates due process." *Id*. at 300. The court agreed "that a disability claimant is entitled to a timely hearing and decision on his or her application for benefits," but it "recognize[d] . . . that the time required before a well-reasoned and sound decision on such an application can be made will vary widely on a case-by-case basis." *Id.* (citing *Heckler v. Day*, 467 U.S. 104, 118 (1984)). Reasoning that a bright-line rule could lead to undue pressure to make a decision in a complex case, the *Marconi* court held that a "case-by-case assessment must be made to determine whether, under the specific facts and circumstances presented, the claimant was deprived of due process." *Id*. The *Marconi* court concluded that no due process violation had occurred in the case before it, given the complexity of the case and the uncontested fact that the delay was caused in part by the addition of new board members. *See id*. at 299–300.

   Unlike the *Marconi* court, this court has no way of assessing the legal and factual complexity of Taylor's duty disability benefit application based on his federal complaint. *See Marconi*, 870 N.E.2d at 299. The board has not provided any information on what additional evidence it is seeking. *See* Compl. ¶¶ 21–25. Nor can Taylor plead this information without some discovery. His lawyer has essentially hit a brick wall asking what additional information the board needs. *See* Compl. ¶ 25.

   Regarding the first *Mathews* factor, the private interest affected, Taylor argues in his response to defendants' motion to dismiss that, given the city's determination that he is unfit to

work, a delay in holding a hearing is effectively depriving him "of the financial means to support himself." Resp. 8. The complaint contains no such allegation. In weighing the private interest affected in *Mathews*, the Supreme Court distinguished between plaintiffs seeking need-based public benefits, such as welfare assistance "given to persons on the very margin of subsistence," and claims for disability benefits, because disability claims do not generally depend on the claimant's financial need. *See Mathews*, 424 U.S. at 340–43; *see also David*, 538 U.S. at 717. Taylor's complaint sheds no light on whether he has any savings, whether he has other means of supporting himself, or whether he can work temporarily in another field, despite being allegedly unfit to work as a police officer due to his disability. *See Mathews*, 424 U.S. at 340–41. Thus, the complaint provides the court with insufficient information to assess the first *Mathews* factor.

The record also does not suffice to assess the second and third *Mathews* factors. The complaint is devoid of allegations as to how, if at all, the delay is likely to affect the accuracy of the board's decision-making process, and nothing is said about the administrative and fiscal burdens likely to be imposed upon the board. *See generally* Compl. *passim*. The board's briefing provides no help either. The board says only that Taylor must wait his turn in the queue of claimants awaiting a hearing date. *See* Reply 4, ECF No. 17. How long is the queue? And how much time is Taylor likely to wait? More than a year has now passed since Taylor's initial hearing and, as far as this court knows, no hearing has been scheduled.

Although the complaint provides little information on the *Mathews* factors, much of the relevant information—such as the likely impact of the delay on the decision-making process and the financial burdens to the government—cannot be easily pleaded by most plaintiffs without some discovery. A complaint need "only present 'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence' of illegal acts." *Vasquez v. Ind. Univ. Health, Inc.*, 40 F.4th 582, 587 (7th Cir. 2022) (quoting *Twombly*, *supra*, 550 U.S. at 556); *see also Brooks v. Ross*, 578 F.3d 574, 581–82 (7th Cir. 2009).

Nevertheless, the Supreme Court's decision in *Loudermill* illuminates what is required to plead a claim of a due process violation based on delay in holding a hearing. *See* 470 U.S.

13

at 546–47.  In *Loudermill*, two civil servants filed federal complaints alleging that they were denied due process because they did not receive hearings before losing their jobs and that delays in holding post-deprivation hearings also denied them due process.  *See id*. at 535–37.  The Supreme Court held that the due process clause required a pre-deprivation hearing.  *Id*. at 544–45.  But the Court also ruled that the complaint did not state a claim that the post-firing delay in holding a hearing violated due process.  *Id*. at 547.  The Court reasoned:

> Loudermill offers no indication that his wait was unreasonably prolonged other than the fact that it took nine months.  The chronology of the proceedings set out in the complaint, coupled with the assertion that nine months is too long to wait, does not state a claim of a constitutional deprivation.

*Id*.

Like the complaint in *Loudermill*, Taylor's complaint, construed in the light most favorable to him, does no more than chronicle the history of his application to the board and assert that an unexplained four-month delay is too long to wait.  *See* Compl. ¶¶ 14–39.  This does not suffice to state a claim under *Loudermill*, and the four-month delay alleged in the complaint falls well short of the eight-month delay found not to be egregious in *Schroeder* (or the longer delays in the cases cited therein, including *Mathews*).  *See* 927 F.2d at 960 (citations omitted).  Under *Loudermill* and *Schroeder*, Taylor has not pleaded a plausible claim that the delay here rises to the level of egregiousness required to state a due process claim.  *See Loudermill*, 470 U.S. at 547; *Schroeder*, 927 F.2d at 960; *see also Marconi*, 810 N.E.2d at 299–300.

## IV.  Conclusion

For the reasons stated, defendants' motion to dismiss the complaint is granted in part and denied in part.  Defendants' motion to dismiss under the *Rooker-Feldman* doctrine is denied.  The complaint is dismissed for failure to state a claim upon which relief can be granted.  A plaintiff should ordinarily receive at least one opportunity to cure the defects in a complaint.  *See Foster v. DeLuca*, 545 F.3d 582, 584 (7th Cir. 2008).  Accordingly, if he wishes, Taylor may file an amended complaint within 21 days, on or before October 16, 2023.

Dated:  September 25, 2023               /s/ Joan B. Gottschall
                                         United States District Judge